SYLLABUS

*This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.*

**State v. Paulino Njango (A-79-19) (084286)**

**Argued March 16, 2021 -- Reargued April 26, 2021 -- Decided August 3, 2021**

**ALBIN, J., writing for a unanimous Court.**

The issue in this case is whether defendant Paulino Njango, whose time in prison exceeded the permissible custodial term authorized by his sentence, is entitled to have the excess prison time he served -- known as service credits -- reduce the period of parole supervision he must serve under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

In 2007, in accordance with a plea agreement with the State, Njango pled guilty to certain counts in a 2006 indictment and a 2007 indictment. In November 2007, the trial court imposed concurrent sentences on all of the charges to which Njango pled guilty in the two indictments. Njango's overall sentence was an eighteen-year NERA term -- meaning that he was parole-ineligible until he completed eighty-five percent of that eighteen-year term -- followed by a five-year period of parole supervision.

Njango filed a petition for post-conviction relief (PCR), which was denied. He also filed a motion to correct an illegal sentence, in which he advanced the surprising argument that the trial court should have imposed consecutive sentences rather than concurrent sentences under N.J.S.A. 2C:44-5(h). The trial court found the statute inapplicable in light of the plea agreement, but the Appellate Division reversed because the sentencing court had not made the "serious injustice" finding necessary to justify its decision not to impose consecutive sentences for the offenses defendant committed while released on bail.

The State and Njango entered into a superseding plea agreement in August 2015. In accordance with the new agreement, Njango pled guilty to certain offenses from both the 2006 and 2007 indictments. The court sentenced Njango on the 2006 indictment to an overall ten-year NERA term (subject to a five-year period of parole supervision) to run consecutive to the sentences imposed on the 2007 indictment. On the 2007 indictment, the court imposed an overall eight-year NERA term (subject to a three-year period of parole supervision). Njango's aggregate sentence was an eighteen-year term, with a fifteen-year, three-month, and eighteen-day parole disqualifier pursuant to NERA. He also was subject to an eight-year period of parole supervision after completing the custodial portion of his sentence. See N.J.S.A. 2C:43-7.2(c).

1

The court rejected Njango's request to credit him for the time served on each offense during the period the sentences on those offenses ran concurrently. Instead, the court applied Njango's total 2,692 days (approximately seven-and-a-half years) of prior service credits to the front-end of his aggregate eighteen-year sentence. In a February 2017 decision, the Appellate Division reversed, determining that Njango should be credited for the time he simultaneously served on the two indictments. The Court denied the State's petition for certification challenging that decision. On remand, the trial court awarded Njango 2,692 days of service credits on both indictments. The next day, Njango was released from prison.

Njango filed a PCR petition, claiming that had he received the proper number of service credits at the time of his second sentencing, he should have been immediately released from prison. He maintained that, as a result of the second sentencing court's error, he served an additional one year and seven months in prison. As a remedy, he sought to have the period of parole supervision reduced by the excess time he served in prison or, alternatively, to withdraw his plea. The PCR court denied the motion and the Appellate Division affirmed, holding "that mandatory periods of parole supervision imposed under NERA cannot be reduced by prior service credits, even where the defendant was imprisoned longer than he should have been due to a failure to properly award such credit." 463 N.J. Super. 1, 10 (App. Div. 2020).

The Court granted certification. 243 N.J. 264 (2020).

**HELD:** The mandatory period of parole supervision imposed under NERA is part of a unitary sentence that is penal in nature. The State has kept Njango in prison for more than a year beyond his release date. Without credit for the excess prison time, Njango would serve more time in the custody of the Department of Corrections than authorized by his sentence. Under the fundamental fairness doctrine -- an integral part of the due process guarantee of the New Jersey Constitution -- the excess time Njango erroneously served in prison must be credited to reduce the period of his parole supervision.

1. The Court does not reach the question, addressed on reargument, of whether defendant is entitled to service credits on each count for which he was sentenced, or whether the principles of State v. C.H., 228 N.J. 111 (2017), apply. In C.H., the Court determined that, pursuant to Rule 3:21-8, the defendant was not entitled to the double counting of pre-sentence jail credits "for time simultaneously spent in custody" on charges in two separate indictments for which he received consecutive sentences. Id. at 118, 121. The Court's denial of certification as to the 2017 Appellate Division decision should not be read as a determination or commentary on the merits of that decision. See State v. Hodge, 105 N.J. 518, 519 (1986). Nevertheless, Njango had an expectation of finality in that prior determination, and the Court thus confines its discussion to whether the excess time Njango served in prison can offset the time he must serve under parole supervision pursuant to NERA. The Court reviews the parties' arguments on that issue. (pp. 11-15)

2

2. Based on the Appellate Division's 2017 decision, Njango served at least one year and seven months in prison beyond his release date. From the State's public-safety perspective, one year and seven months of prison surely is the equivalent of the same period under parole supervision. A defendant is in the custody of the Department of Corrections when serving a term of imprisonment under NERA. And, while serving a NERA period of parole supervision, the defendant remains "in the legal custody of the Commissioner of the Department of Corrections, and shall be supervised by the Division of Parole of the State Parole Board as if on parole." N.J.S.A. 30:4-123.51b(a). Under New Jersey jurisprudence, parole is "in legal effect imprisonment" and therefore punishment. Riley v. State Parole Bd., 219 N.J. 270, 288 (2014). Accordingly, if Njango does not receive service credits for the excess time served in prison, he will remain in the custody of the Department of Corrections for a year and seven months beyond the maximum sentence imposed by the trial court. (pp. 15-18)

3. The Court has "construed the expansive language of Article I, Paragraph 1 [of the New Jersey Constitution] to embrace the fundamental guarantee of due process." Jamgochian v. State Parole Bd., 196 N.J. 222, 239 (2008). An "integral part" of that guarantee of due process is the doctrine of fundamental fairness, which "serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against government procedures that tend to operate arbitrarily." Doe v. Poritz, 142 N.J. 1, 108 (1995) (emphasis omitted). (pp. 18-20)

4. No persuasive reason has been advanced to explain why Njango's serving an extra one year and seven months in prison -- when he should have been serving that time on parole supervision -- should not be credited towards his parole supervision period. The objective of parole supervision -- to protect the public from the risk from violent offenders -- was certainly satisfied when he was mistakenly or erroneously incarcerated beyond the prescribed time for his release. If Njango were incarcerated for a violation of his parole supervision, he would be entitled to use his excess service credits to reduce his custodial time and therefore the overall period of his parole supervision. That a defendant who violates parole can benefit from excess service credits while a defendant who complies with parole cannot is an absurd result that the Legislature could not have had in mind. The fundamental fairness doctrine is intended to provide a remedy for inequitable and arbitrary decisionmaking. See ibid. Here, notions of fundamental fairness compel conforming NERA to the State Constitution in a way that the Legislature would likely have intended. Njango's eight-year period of parole supervision must be reduced by the excess time he served in prison (pp. 20-22)

**REVERSED and REMANDED to the Parole Board.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.**

3

# SUPREME COURT OF NEW JERSEY

## A-79 September Term 2019

## 084286

State of New Jersey,

Plaintiff-Respondent,

v.

Paulino Njango, a/k/a
Paulino Niango, and
Paulino Ernesto Njango,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division, whose opinion is reported at
463 N.J. Super. 1 (App. Div. 2020).

| Argued | Decided |
|---|---|
| March 16, 2021 | August 3, 2021 |
| Reargued | |
| April 26, 2021 | |

Cody T. Mason, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora, Public
Defender, attorney; Cody T. Mason, of counsel and on
the briefs).

Barbara A. Rosenkrans, Special Deputy Attorney
General/Acting Assistant Prosecutor, argued the cause for
respondent (Theodore N. Stephens, II, Acting Essex
County Prosecutor, attorney; Barbara A. Rosenkrans, of
counsel and on the briefs, and Frank J. Ducoat, Special
Deputy Attorney General/Acting Assistant Prosecutor, on
the briefs).

Jennifer E. Kmieciak, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Andrew J. Bruck, Acting Attorney General, attorney; Jennifer E. Kmieciak, of counsel and on the briefs).

JUSTICE ALBIN delivered the opinion of the Court.

The issue in this case is whether defendant Paulino Njango, whose time in prison exceeded the permissible custodial term authorized by his sentence, is entitled to have the excess prison time he served -- known as service credits -- reduce the period of parole supervision he must serve under the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2.

The post-conviction relief court found that the excess time Njango served in custody was "unfortunate" but could not "be given back." The Appellate Division affirmed, determining that the period of Njango's NERA parole supervision could not be reduced, even though "[Njango] was imprisoned longer than he should have been due to a failure to properly award" him prior service credits. State v. Njango, 463 N.J. Super. 1, 10 (App. Div. 2020).

We now reverse. The mandatory period of parole supervision imposed under NERA is part of a unitary sentence that is penal in nature. Njango was sentenced to an aggregate eighteen-year custodial term and, upon his release

2

from prison, ordered to serve an aggregate eight-year period of parole supervision. During the entirety of Njango's prison sentence and his period of parole supervision, he has been in the custody of the Department of Corrections. The State has kept Njango in prison for more than a year beyond his release date. Without credit for the excess prison time, Njango would serve more time in the custody of the Department of Corrections than authorized by his sentence.

We do not agree that relief cannot be granted to Njango. The fundamental fairness doctrine is an integral part of the due process guarantee of Article I, Paragraph 1 of the New Jersey Constitution, which protects against arbitrary and unjust government action. See Doe v. Poritz, 142 N.J. 1, 108 (1995). We hold that the excess time that Njango erroneously served in prison must be credited to reduce the period of his parole supervision.

We remand to the New Jersey Parole Board for a calculation of the excess time Njango served in prison and a credit toward his period of parole supervision.

I.

A.

We begin by recounting the pertinent parts of the strange and tortuous procedural path this case has taken to reach this Court.

3

On September 24, 2007, in accordance with a plea agreement with the State, Njango pled guilty to certain counts in two separate indictments, which we will call the 2006 and 2007 indictments. In the 2006 indictment, Njango pled guilty to first-degree kidnapping, N.J.S.A. 2C:13-1(b)(1); first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; second-degree burglary, N.J.S.A. 2C:18-2; and fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d). Those charges relate to crimes Njango committed against his ex-mother-in-law in June 2006.

In the 2007 indictment, Njango pled guilty to first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; fourth-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(d); and third-degree terroristic threats, N.J.S.A. 2C:12-3(a). Those charges relate to crimes Njango committed against his ex-wife in May 2007 while he was released on bail for the charges in the 2006 indictment.

On November 30, 2007, the trial court imposed concurrent sentences on all of the charges to which Njango pled guilty in the two indictments. Njango was sentenced on the attempted murder charges in the two indictments and on the kidnapping charge in the 2006 indictment to concurrent eighteen-year terms of imprisonment, subject to NERA, which rendered Njango parole-ineligible until he completed eighty-five percent of that sentence. As part of

4

that NERA sentence, the court "ordered [Njango] to serve a 5 year term of parole supervision which term shall begin as soon as defendant completes the sentence of incarceration." See N.J.S.A. 2C:43-7.2(c).

In addition, the court imposed an eighteen-month term for unlawful possession of a weapon and merged the burglary charge on the 2006 indictment and an eighteen-month term for unlawful possession of a weapon and a five-year term for terroristic threats on the 2007 indictment. Njango was also ordered to pay fines and penalties, and all remaining charges in the two indictments were dismissed. Njango's overall sentence was an eighteen-year NERA term with a five-year period of parole supervision.

B.

Njango filed a petition for post-conviction relief (PCR), claiming that he was "under the influence of prescription medication at the time of the plea" and ineffectively assisted by counsel. His petition was ultimately denied.

While that PCR petition was pending, Njango filed a motion to correct an illegal sentence and advanced the surprising argument that the trial court should have imposed consecutive sentences rather than concurrent sentences under N.J.S.A. 2C:44-5(h). That statute provides that when a defendant commits an offense while released on bail for a prior offense, sentences of imprisonment for the offenses "shall run consecutively . . . unless the court . . .

5

finds that imposition of consecutive sentences would be a serious injustice which overrides the need to deter such conduct by others." N.J.S.A. 2C:44-5(h).

The trial court found the statute inapplicable because Njango's sentence was imposed pursuant to a plea agreement, but the Appellate Division reversed because the sentencing court had not made the "serious injustice" finding necessary to justify concurrent terms of imprisonment. The Appellate Division remanded to the sentencing court either to justify the imposition of concurrent sentences or to vacate the plea agreement and reinstate the charges.

The trial court never addressed the remand issue because the State and Njango entered into a superseding plea agreement in August 2015. In accordance with the new agreement, Njango pled guilty to the first-degree attempted murder, second-degree burglary, and fourth-degree unlawful possession of a weapon charges in the 2006 indictment, and to the second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1), fourth-degree unlawful possession of a weapon, and third-degree terroristic threats charges in the 2007 indictment. The court sentenced Njango on the 2006 indictment to a ten-year NERA term for attempted murder (subject to a five-year period of parole supervision), a concurrent ten-year term for burglary, and to a concurrent eighteen-month term for unlawful possession of a weapon all to run

6

consecutive to the sentences imposed on the 2007 indictment. On the 2007 indictment, the court imposed an eight-year NERA term for aggravated assault (subject to a three-year period of parole supervision), a concurrent term of eighteen months for unlawful possession of a weapon, and a concurrent term of five years for terroristic threats. Fines and penalties were imposed, and all remaining charges were dismissed.

Njango's aggregate sentence was an eighteen-year term, with a fifteen-year, three-month, and eighteen-day parole disqualifier pursuant to NERA. He also was subject to an eight-year period of parole supervision after completing the custodial portion of his sentence. See N.J.S.A. 2C:43-7.2(c). The court rejected Njango's request to credit him for the time served on each offense during the period the sentences on those offenses ran concurrently. Instead, the court applied Njango's total 2,692 days (approximately seven-and-a-half years) of prior service credits to the front-end of his aggregate eighteen-year sentence.[1]

---

[1] Defendant was also awarded 660 days of jail credit. Service credits are awarded to a defendant for time served on a custodial sentence following the entry of a judgment of conviction. Jail credits are awarded to a defendant for time served in custody prior to the entry of a judgment of conviction. See State v. C.H., 228 N.J. 111, 117 (2017).

On February 1, 2017, the Appellate Division reversed "the trial court's decision not to award prior service credit" on the concurrent sentences imposed on the two indictments at the first sentencing. In determining that Njango should be credited for the time he simultaneously served on the two indictments, the Appellate Division looked to North Carolina v. Pearce, which held that the Fifth Amendment guarantee against double jeopardy "requires that credit must be given for punishment already endured" and that "punishment already exacted must be fully 'credited' in imposing sentence upon a new conviction for the same offense," 395 U.S. 711, 717, 718-19 (1969). From Pearce, the Appellate Division reasoned "that failing to award [Njango] prior service credit from the two vacated concurrent sentences to both of the resentenced consecutive terms would violate [his] Fifth Amendment rights."

We denied the State's petition for certification. 230 N.J. 363 (2017). On May 9, 2017, the trial court amended the judgments of conviction and awarded Njango 2,692 days of service credits on both indictments. The next day, Njango was released from prison. We later denied the State's motion for reconsideration of our order denying certification.

8

## C.

Njango filed a PCR petition, claiming that had he received the proper number of service credits at the time of his second sentencing, he should have been immediately released from prison. He maintained that, as a result of the second sentencing court's error, he served an additional one year and seven months in prison.[2] As a remedy, he sought to have the period of parole supervision reduced by the excess time he served in prison or, alternatively, to withdraw his plea.

The PCR court stated, "[T]hat the defendant had to spend more time in custody is unfortunate, but it is sometimes the nature of appeals. And that's not time that can be given back." The court noted that the calculation of service credits is a matter for the Department of Corrections and the Parole Board and that further review must be sought in the Appellate Division. Determining that Njango's sentence was not illegal, the court denied Njango's petition.

---

[2] The one year-and-seven-month period covers the time between Njango's October 1, 2015 sentencing and his release from prison on May 10, 2017, after the Appellate Division awarded the service credits due to him.

D.

The Appellate Division affirmed the PCR court, holding "that mandatory periods of parole supervision imposed under NERA cannot be reduced by prior service credits, even where the defendant was imprisoned longer than he should have been due to a failure to properly award such credit." Njango, 463 N.J. Super. at 10. The Appellate Division emphasized that NERA's imposition of a five-year period of parole supervision for a first-degree crime and three-year period of parole supervision for a second-degree crime is "mandatory," citing N.J.S.A. 2C:43-7.2(c). Id. at 8-9. The court asserted that "the Legislature's objective in requiring mandatory parole supervision for NERA offenses was 'to protect the public from the risk posed by the release of violent offenders from incarceration.'" Id. at 9 (quoting State v. Friedman, 209 N.J. 102, 120 (2012)). It reasoned that allowing a defendant to "trade unused prior service credit for mandatory parole supervision time on a NERA offense . . . would be contrary to the Legislature's purpose in enacting the mandatory parole supervisory period." Id. at 10.

The Appellate Division also rejected Njango's bid to withdraw his guilty plea "at this late date," stating that he had not sought to do so when the sentencing court ruled against his request to apply service credits to both indictments and that a plea withdrawal would not "remedy [the] situation." Id.

10

at 10-11. Last, the Appellate Division found no merit in Njango's double jeopardy argument, explaining that "there is no way the years he spent in prison can be returned to him." Id. at 11 (quoting Pearce, 395 U.S. at 719).

E.

We granted Njango's petition for certification, which framed the "question presented" as "[w]hether prior service credits for time that a person was wrongfully imprisoned beyond the term of incarceration may be applied to periods of parole supervision required under the No Early Release Act." See 243 N.J. 264 (2020). We also granted the motion of the New Jersey Attorney General to participate as amicus curiae.

After we heard argument on the question presented, we requested supplemental briefing to address "whether defendant is entitled to service credits on each count for which he was sentenced, or whether the principles of State v. C.H., 228 N.J. 111 (2017) apply."[3] The case was then re-argued.

Despite the fine presentations on re-argument, we will not revisit the Appellate Division's decision, issued four years ago, which granted Njango service credits for the time he simultaneously served on the two indictments

---

[3] In C.H., we determined that, pursuant to Rule 3:21-8, the defendant was not entitled to the double counting of pre-sentence jail credits "for time simultaneously spent in custody" on charges in two separate indictments for which he received consecutive sentences. 228 N.J. at 118, 121.

11

while the sentences ran concurrently -- a decision resulting in Njango's release from prison and the commencement of his parole supervision. To be sure, our denial of certification as well as our denial of the motion for reconsideration should not be read as a determination or commentary on the merits of that prior Appellate Division decision. Our jurisprudence makes clear that the denial of a petition for certification is not an expression of approval or disapproval of an opinion or judgment of the Appellate Division. State v. Hodge, 105 N.J. 518, 519 (1986). Nevertheless, Njango had an expectation of finality in that Appellate Division determination.

Accordingly, we view the Appellate Division's 2017 ruling as the law of this case. See State v. K.P.S., 221 N.J. 266, 276-77 (2015). "The law-of-the-case doctrine is a non-binding rule intended to prevent relitigation of a previously resolved issue in the same case." Id. at 276 (emphasis and quotation omitted). The doctrine is "guided by the 'fundamental legal principle . . . that once an issue has been fully and fairly litigated, it ordinarily is not subject to relitigation between the same parties either in the same or in subsequent litigation,'" id. at 277 (omission in original) (emphasis omitted) (quoting Morris Cnty. Fair Hous. Council v. Boonton Township, 209 N.J. Super. 393, 444 n.16 (Law Div. 1985)).

12

With that approach in mind, we will confine our discussion to the issue on which we originally granted certification -- whether the excess time Njango served in prison can offset the time he must serve under parole supervision pursuant to NERA.

## II.

## A.

Njango argues that the Appellate Division's determination that he is not entitled to apply his service credits -- the excess time he served in prison -- to reduce the remaining portion of his eight-year period of parole supervision violates the double jeopardy principles of the United States and New Jersey Constitutions. Njango maintains that parole supervision "is a component of, and not separate from," an overall NERA sentence. Because NERA parole is punishment, akin to imprisonment, Njango reasons NERA parole extends the period of his punishment. If his excess prison time does not reduce his period of parole supervision, Njango asserts that the time he will have served in prison and on parole supervision will exceed the maximum permissible limit of his sentence. He insists that whatever the Legislature's intent may be, it "cannot override the constitution." Denying him the right to apply the service credits accumulated on his first sentence toward his second sentence, he asserts, contravenes the double jeopardy prohibition against receiving

13

"multiple punishments for the same offense," quoting State v. Miles, 229 N.J. 83, 92 (2017) (citing, in turn, Pearce, 395 U.S. at 717).

B.

The State and the Attorney General (collectively, the State) advance many of the same arguments in urging this Court to affirm the Appellate Division. The State explains that Njango "spent more time incarcerated because of the appellate process -- and no other reason," and that "[t]he criminal justice system can't provide a remedy." The State contends that, under N.J.S.A. 2C:43-7.2(c), "the mandatory period of parole supervision [for a NERA offense] does not commence until the defendant's release from incarceration" and that Njango cannot apply "unused prior-service credits to reduce [a] mandatory supervision period" without contravening the plain language of the statute and the Legislature's intent.

The State emphasizes that parole supervision begins when a defendant is actually released from prison -- "not some hypothetical date he should have been freed." The State also posits that incarceration serves a different purpose from mandatory parole supervision, which is intended to monitor and supervise released offenders for public safety and rehabilitative purposes. Additionally, the State claims that reducing Njango's eight-year period of supervised release "would shatter the expectations of the State and the trial

14

court." In its view, Njango received double service credits, and such a windfall does not implicate double jeopardy concerns.

III.

A.

We accept this case as it has come to us, from a determination by the Appellate Division in 2017 that the trial court mistakenly denied Njango service credits toward his second sentence. Based on that decision, Njango served at least one year and seven months in prison beyond his release date.[4] Had he been timely released from prison, he would have completed one year and seven months of parole supervision. From the State's public-safety perspective, one year and seven months of prison surely is the equivalent of the same period under parole supervision.

The question is whether, within the constitutional framework of our system of justice, there is no remedy -- as the State asserts -- for the time Njango should not have spent in prison. We begin with a review of the relevant provisions of the No Early Release Act.

---

[4] We note here that Njango also claims that at the time of sentencing, he had already served approximately an extra 1.3 years beyond the point at which he should have been paroled. We are not in a position to pass judgment on the accuracy of his calculation. That calculation must be made by the New Jersey State Parole Board and/or the Department of Corrections.

15

N.J.S.A. 2C:43-7.2(a) provides that a court sentencing a defendant to a term of incarceration for a first- or second-degree crime enumerated in subsection (d) "shall fix a minimum term of 85% of the sentence imposed, during which the defendant shall not be eligible for parole." The eighty-five percent period of parole ineligibility is known as a NERA sentence. Among the crimes enumerated in subsection (d) of N.J.S.A. 2C:43-7.2 are first-degree attempted murder, N.J.S.A. 2C:5-1 and N.J.S.A. 2C:11-3; and second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) -- crimes to which Njango pled guilty.

N.J.S.A. 2C:43-7.2(c) further provides that a court meting out a NERA sentence "shall also impose a five-year term of parole supervision if the defendant is being sentenced for a crime of the first degree, or a three-year term of parole supervision if the defendant is being sentenced for a crime of the second degree." Under subsection (c), a defendant's NERA parole supervision begins

> upon the completion of the sentence of incarceration imposed by the court pursuant to [N.J.S.A. 2C:43-7.2(a)] unless the defendant is serving a sentence of incarceration for another crime at the time he completes the sentence of incarceration imposed pursuant to subsection (a), in which case the term of parole supervision shall commence immediately upon the defendant's release from incarceration.

> [N.J.S.A. 2C:43-7.2(c).]

16

A defendant is in the custody of the Department of Corrections when serving a term of imprisonment under NERA. Ibid.; N.J.S.A. 30:4-123.51b(a). While serving a NERA period of parole supervision, the defendant remains "in the legal custody of the Commissioner of the Department of Corrections, and shall be supervised by the Division of Parole of the State Parole Board as if on parole." N.J.S.A. 30:4-123.51b(a); see also N.J.S.A. 2C:43-7.2(c). If a defendant fails to abide by the conditions of his parole, the board panel has the authority to "revoke [his] release status and return [him] to custody for the remainder of the term" or until he again becomes eligible for release. N.J.S.A. 30:4-123.51b(a).

## B.

Under our jurisprudence, parole is "in legal effect imprisonment" and therefore punishment. Riley v. State Parole Bd., 219 N.J. 270, 288 (2014) (quoting Anderson v. Corall, 263 U.S. 193, 196 (1923)); see also State v. Rosado, 131 N.J. 423, 428 (1993) ("[P]arole is the legal equivalent of imprisonment . . . ."). We have described NERA's mandatory period of parole supervision as having a "penal impact" and a "penal consequence" to a plea to a NERA offense. State v. Johnson, 182 N.J. 232, 240 (2005). Indeed, one of the "harsh consequences" of the mandatory period of parole supervision is that a parole violation "could subject defendant to additional incarceration for a

17

length of time that could make the custodial sentence, in the aggregate, far exceed the original sentence imposed as part of the plea bargain." Ibid.

As noted, a defendant who is imprisoned for a NERA offense remains in the custody of the Department of Corrections when placed on NERA parole supervision. Accordingly, if Njango does not receive service credits for the excess time served in prison, he will remain in the custody of the Department of Corrections for a year and seven months beyond the maximum sentence imposed by the trial court. Clearly, the Legislature did not contemplate whether a defendant wrongly or mistakenly compelled to remain in prison beyond his prescribed sentence should be mandated to serve the entire period of parole supervision without a remedy. The arbitrary government decisionmaking that has denied Njango a remedy for a wrong is addressed by the fundamental fairness doctrine.

## C.

The fundamental fairness doctrine finds its source in Article I, Paragraph 1 of the New Jersey Constitution, which "sets forth the first principles of our governmental charter -- that every person possesses the 'unalienable rights' to enjoy life, liberty, and property, and to pursue happiness." Lewis v. Harris, 188 N.J. 415, 442 (2006). Despite the absence of the phrase due process in that paragraph, this Court has "construed the expansive language of Article I,

18

Paragraph 1 to embrace the fundamental guarantee of due process." Jamgochian v. State Parole Bd., 196 N.J. 222, 239 (2008).

An "integral part" of that guarantee of due process is the doctrine of fundamental fairness. See State v. Shaw, 241 N.J. 223, 239 (2020) (quoting State v. Saavedra, 222 N.J. 39, 67 (2015)); see also State v. Abbati, 99 N.J. 418, 429 (1985). The doctrine "serves to protect citizens generally against unjust and arbitrary governmental action, and specifically against government procedures that tend to operate arbitrarily." Doe, 142 N.J. at 108 (emphasis omitted) (quoting State v. Ramseur, 106 N.J. 123, 377 (1987) (Handler, J., dissenting)). The "one common denominator" in our fundamental fairness jurisprudence is "that someone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked." Id. at 109. The fundamental fairness doctrine "promotes the values of 'fairness and fulfillment of reasonable expectations in the light of the constitutional and common law goals.'" State v. Vega-Larregui, 246 N.J. 94, 132 (2021) (quoting Saavedra, 222 N.J. at 68). We apply the fundamental fairness doctrine "'sparingly' and only where the 'interests involved are especially compelling.'" Saavedra, 222 N.J. at 67 (quoting Doe, 142 N.J. at 108).

"Because we have, from time to time, construed Article I, Paragraph 1 to provide more due process protections than those afforded under the United

States Constitution," Jamgochian, 196 N.J. at 239, we will rely on the fundamental fairness doctrine to resolve the issue before us.

IV.

At Njango's second sentencing, the trial court imposed an aggregate eighteen-year NERA term to be followed by an aggregate eight-year mandatory period of parole supervision. That unitary sentence placed Njango in the custody of the Department of Corrections for a maximum of twenty-six years. The failure of the PCR court and the Appellate Division to credit Njango with the excess prison time served, in effect, has extended Njango's period in the custody of the Department of Corrections to twenty-seven years and seven months. That means that Njango's actual sentence now exceeds the sentence imposed by the trial court.

Although the Appellate Division is correct that "the Legislature's objective in requiring mandatory parole supervision for NERA offenses was 'to protect the public from the risk posed by the release of violent offenders from incarceration,'" Njango, 463 N.J. Super. at 9 (quoting Friedman, 209 N.J. at 120), the NERA term of incarceration serves precisely the same objective.

As noted earlier, "parole is the legal equivalent of imprisonment," Rosado, 131 N.J. at 428, and NERA's mandatory period of parole supervision is deemed a "penal consequence" of a NERA offense, Johnson, 182 N.J. at

20

240. Parole supervision constitutes a loss of liberty of a kind, if not to the degree of incarceration. No persuasive reason has been advanced to explain why Njango's serving an extra one year and seven months in prison -- when he should have been serving that time on parole supervision -- should not be credited towards his overall sentence, in particular the parole supervision period. The objective of parole supervision -- to protect the public from the risk from violent offenders -- was certainly satisfied when he was mistakenly or erroneously incarcerated beyond the prescribed time for his release. See Njango, 463 N.J. Super. at 9.

As pointed out by Njango, if he were incarcerated for a violation of his parole supervision, he would be entitled to use his excess service credits to reduce his custodial time and therefore the overall period of his parole supervision. That a defendant who violates parole can benefit from excess service credits while a defendant who complies with parole cannot is an absurd result that the Legislature could not have had in mind.

We must construe a statute, such as NERA, in a commonsense way "so that its reach does not exceed its constitutional limits." See State v. Garron, 177 N.J. 147, 172 (2003). The fundamental fairness doctrine is intended to provide a remedy for the inequitable and arbitrary decisionmaking that, in this case, has resulted in a year-and-seven-month loss of liberty for which the State

21

will not give Njango credit toward his eight-year mandatory period of parole supervision.  See Doe, 142 N.J. at 108.  Here, notions of fundamental fairness compel us to conform NERA to our State Constitution in a way that the Legislature would likely have intended.  See State v. Natale, 184 N.J. 458, 485 (2005).

Accordingly, we conclude that Njango's eight-year period of parole supervision must be reduced by the excess time he served in prison.

V.

For the reasons expressed, we reverse the judgment of the Appellate Division.  We remand to the New Jersey State Parole Board to calculate the excess time Njango served in prison and to credit that time toward the remaining period of his parole supervision.[5]  The Parole Board will conduct -- consistent with this opinion -- any proceedings that may be necessary.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, PATTERSON, FERNANDEZ-VINA, SOLOMON, and PIERRE-LOUIS join in JUSTICE ALBIN's opinion.

---

[5]  We do not suggest that the Parole Board may not rely on or be assisted by the Department of Corrections in making the appropriate calculation.